## Bunch v. Bertram.

(Decided May 17, 1927.)

## Appeal from Daviess Circuit Court.

1. Fraud.—In action for damages against vendor for misrepresentation that basement of property purchased would be dry, testimony that before purchaser bought third party refused to carry out a trade for the property made with a real estate agent because the basement was filled with water, held inadmissible; there being no definite evidence that the real estate agent was authorized to act for vendor.

2. Fraud.—In action for damages by purchaser against vendor for misrepresentation that basement would not leak, any evidence to show that vendor knew that basement leaked prior to the time he sold the property held admissible.

3. Fraud.—In action for damages by purchaser against vendor for misrepresentation that basement would not leak, evidence that vendor made representations to others than purchaser that basement was dry and would not leak held admissible to show vendor's general intent to sell the property on that representation.

4. Fraud.—In action for damages by purchaser against vendor for misrepresentation that basement would not leak, any evidence to show intent to defraud on part of vendor held admissible.

5. Fraud.—Where a representation is made in positive terms as to a fact within the knowledge of the speaker, and the representation is not so unreasonable as to raise a doubt in mind of hearer, hearer may rely on it without investigation, when investigation would be so difficult that hearer would probably not ascertain falsity of representation.

6. Fraud.—Vendor's positive statement, if made, that basement of house was dry, and would continue to be dry, might be relied on by the purchaser.

7. Fraud.—For vendor to be liable for a representation as to a fact within his actual knowledge, he must intend to deceive.

8. Fraud.—For purchaser to recover for representation by vendor as to a fact within his knowledge, purchaser must show scienter on part of vendor as to falsity of representation.

9. Fraud.—If a vendor makes a positive representation that something is true, misleading a purchaser who does not know of its falsity, and cannot ascertain its falsity in the exercise of ordinary care, he is liable in damages, although he does not know that his representation is false.

10. Fraud.—Where vendor is expressing an opinion as to the truth of what he says, knowledge of the falsity of the representation is requisite to liability for the representation.

11. Fraud.—In action for damages by purchaser against vendor for misrepresentation that basement was dry, and did not leak, vendor's liability held for jury.

12. Fraud.—Measure of damages for vendor's alleged misrepresentation that basement of house sold did not leak was the difference, if any, between the value of the house with basement as represented and the value of the house with the basement that it in in fact had.

BARNES, SMITH & KIRTLEY for appellant.

ERNEST ROWE for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The apppellant, Bunch, purchased a house and lot in Buena Vista Heights addition to the city of Owensboro from the appellee, Bertram. This house was purchased by appellant to be used by him and his family as a residence. Under the house was a basement about 15 feet square and 6 feet in height, and in this basement there was installed a hot air furnace for heating the building. Appellant alleged in his petition that appellee represented to him prior to the purchase of said house that the basement thereunder was dry, and would remain dry throughout the succeeding years, because the basement had been so constructed that it would not allow water to leak in, when, according to the allegations in the petition, the basement had not been so constructed as to prevent the percolation of water into it, and that it was not a dry basement, all of which was known by appellee at the time he sold the house, and which was unknown to appellant. It is alleged that within a few weeks after he purchased the property appellant discovered that the basement filled with water when there was a heavy rain.

Appellee denied that he made representations to the appellant in the sale of the house that the basement was dry, and would remain dry, and the case went to trial before a jury in the Daviess circuit court after issue had been joined. At the conclusion of appellant's evidence the court sustained appellee's motion for a directed verdict in his favor, and appellant is here complaining.

We can only determine whether the case should have gone to the jury from a consideration of the testimony offered in the case. Appellant testified that he asked appellee how the basement was constructed and whether it would be dry. The house was hardly completed when the transaction took place. Appellant had heard there was difficulty with water in that section of the city, and wanted to be positive that the basement did not leak. Appellee went on to tell him, so appellant testified, about

the details and how he had mixed the concrete, and about some things he had put in the construction that were especially intended to eliminate all difficulty about water, and that he was sure the basement did not leak. He explained to appellant that the basement was above water level, and, further, that he had put down drainage tile on each side of the property that would care for the surface water. Appellant testified that appellee also represented that he had paid for the privilege of tapping a certain ditch, and, if the water should come in, there would be an outlet, but appellant said in his testimony that appellee assured him that the water would not come in. He testified that he examined the basement himself, but he had no way to determine whether it might or might not fill up with water, and that he relied on the statements of appellee. After appellant moved in, he found that the basement filled up to a large extent with water, and, as soon as he discovered this, he located appellee, and advised him about it. He tried to get appellee to take the property back and release him from further payments, but this appellee declined to do, and agreed that he would make such improvement in the basement as to prevent the water from coming in. Appellee made an effort to keep the water out, but it appears that he was not successful, and the efforts to repair the basement continued for some months. Some feeling was engendered between appellant and appellee, and appellant testified that appellee said to him on one occasion that they were both members of the Baptist Church, and good Christians, and ought to be able to settle the difficulty out of court, and that he knew the matter could be arranged satisfactorily; that appellee said to him that he (appellee) was a man of his word, and sold him a dry basement, and he would make it that way. Appellant testified that the water came into the basement to such an extent that it interfered with the operation of the furnace, and that it was necessary to wade through the water in firing the furnace. His evidence is extensive, and he makes rather a strong case for himself. His daughter testified for him, and detailed many facts in corroboration. She testified that she heard appellee say on several occasions that he never dreamed that water would come into the basement, but he would work on it, if it was desired. Appellee pumped the water out of the basement several times, according to her testimony, as well as that of her father, but he finally grew weary of

his effort and quit. Another witness testified that she heard appellee say to appellant that he assured appellant that there would be no water in the basement, and that he was a man of his word. (Other witnesses corroborated appellant.

Counsel for appellant argued that the court erred in refusing to admit certain evidence which was competent and material. The chief complaint on this score is that appellant offered to prove by a witness that she had made a trade for the property, and refused to take it after she learned that the basement filled with water. The contract which this witness made was not with the appellee, but some real estate agent. We do not believe the evidence was competent as offered, as there is no definite evidence showing that the real estate agent was the authorized agent of appellee. There was some evidence that appellee knew that the basement leaked prior to the time he sold the property to appellant, and any evidence that shows such knowledge on the part of the appellee is competent. If appellee made representations to others that the basement was dry and would not leak, this may be shown, as it would have a tendency to show the general intent of the appellee to dispose of the property upon the representation that the basement was dry. Any evidence which would show an intention on the part of appellee to defraud appellant is competent. Head et al. v. Oglesby, 175 Ky. 613, 194 S. W. 793; Pulliam v. Gentry, 206 Ky. 763, 268 S. W. 557; McGuffin v. Gentry, 206 Ky. 763; McGuffin v. Smith, 215 Ky. 606, 286 S. W. 884. It is well settled that, where a representation is made in positive terms as to a fact actually within the knowledge of the one making the representation, and when the representation itself contains nothing so unreasonable as to create a doubt in the mind of the one to whom it is made, the hearer may reply upon it without an investigation when an investigation would be so difficult as to render it improbable that the hearer would ascertain the falsity of the representation by such an investigation. The tendency of modern decisions is to restrict, rather than to enlarge, the doctrine of caveat emptor. Therefore, if appellee said to appellant, as an inducement to cause appellant to purchase the property, that the basement was dry, and would continue so, the appellant was within his rights in relying upon such positive statement. It is always true, however, that to sustain a charge of fraud in such a case there must be an

intent on the part of the vendor to deceive and mislead the vendee, and for that reason, before there can be a recovery based upon such representations, the vendee must show scienter upon the part of the vendor of the falsity of his representation. But, when the vendor makes a positive statement of something which is alleged by him to be true, and the vendee is misled by such positive statement, and when the vendee did not know of its falsity, and could not have ascertained its falsity by the exercise of ordinary-care, the vendor can be held responsible in damages, although he did not know that his positive statement was untrue at the time he made it. When a party asserts that something is true when he does not know whether it is true or untrue, he is practicing a fraud on the party with whom he deals. It is the policy of the courts to suppress fraud, and at the same time it is the policy of the courts not to encourage negligence and inattention on the part of the purchaser of property. It has been said that it is the lesser of two evils to encourage negligence in the foolish than to encourage fraud in the deceitful. The foolish and credulous should be protected against the machinations of the designedly wicked. 12 R. C. L. 360; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 31 Ky. Law Rep. 1130, 12 L. R. A. (N. S.) 427.

This record does not disclose that appellee certainly intended to practice a fraud upon appellant. It rather tends to show that appellee believed what he said when he told appellant that the basement was dry, but his belief in the truth of his statement in no way lessens the damage to appellant if his statement was false. There is a difference in this case and the one where mere silence was indulged in by the seller. If nothing had been said about whether the basement was dry or otherwise, appellant would be remediless, but such is not the case. Appellee did not refrain from speaking, but spoke what he may have believed to be true, and thereby induced appellant to purchase the property when his belief in the truthfulness of his statement rested on a false foundation. It is true that, in the case of Livermore v. Middlesboro Town Lands Co., 106 Ky. 140, 50 S. W. 6, 20 Ky. Law Rep. 1704, it was held by this court that a fraudulent concealment of material matters of fact is the equivalent of an actual misrepresentation. But this is not a case of fraudulent concealment. It was further held in that case that a statement made as of personal knowledge, but

without such knowledge, was equivalent to a statement the falsity of which was known.

The case of McGuffin v. Smith, 215 Ky. 606, 286 S. W. 884, is authority sustaining the right of a vendee to recover from the vendor where the vendee was induced to purchase the property by representations which were not true. In that case the seller represented that the farm was located on a mail route; that there was a graded school within 800 yards of the house; that there was a good well in the yard; that there was a never-failing pond in the field and water in the horse lot that never failed. In that case the vendee relied upon the representations, but after the trade was consummated, he learned that some of these material representations were false, and this court held that he had a cause of action.

Counsel for appellee cite many cases in support of their contention that there can be no recovery, unless the one making the false representations knew them to be false at the time they were so made. This is true where the one making the representations was expressing an opinion as to the truth of what he said. The old cases went much further in relieving the maker of false representations from responsibility than the later opinions of this court. It is said by counsel for appellee in their brief that in the McGuffin case, supra, the representations were without qualification, and therefore the vendor was held responsible. The representations in the instant case appear to us to have been without qualification if made. It is testified to by more than one witness that appellee admitted that he sold the house with a dry basement, and that was an admission, if true, that he had made a representation without qualification.

There was some evidence that appellee knew that water had come into the basement before he sold the property, and even on the theory of appellee the court should not have given a peremptory instruction to find for appellee. The jury should be instructed that, if they believe from the evidence that appellee represented to appellant that the basement was dry, and would remain dry, they should find for the appellant such damages as he may have sustained, if the jury believes from the evidence that he sustained any damages, and if it believes from the evidence that he relied upon such representation as being true and otherwise would not have purchased the property. On the other hand, the jury should be

told that, if they believe from the evidence that the appellee only represented to appellant that it was his opinion that the basement did not leak, and that he did not know that his representation was false at the time it was so made, he cannot be held responsible for such representation.  The measure of damages, if any, is the difference between the value of the property with a basement such as appellee represented the basement to be and the value of the property with a basement such as the proof shows it to be.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.